*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

RAFAEL KASSIN, *on behalf of himself*    :
*and all others similarly situated*    :      Civ. Action No. 16-4171 (FLW)
                                  :
             Plaintiff,    :             **OPINION**
                                  :
v.                                        :
                                       :
AR RESOURCES, INC.,             :
                                       :
             Defendant.    :
_____:

### WOLFSON, U.S. District Judge:

In this putative class action, brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, both Plaintiff Rafael Kassin ("Plaintiff") and Defendant debt-collection agency AR Resources, Inc. ("Defendant" or "ARR"), move for summary judgment. In addition, Plaintiff moves to certify a class, which motion Defendant does not oppose. The primary dispute in this case centers on certain insurance language contained in a debt collection letter sent by ARR to Plaintiff. The Court previously denied Defendant's motion to dismiss on the grounds that the complained-of language states a claim under the FDCPA.[1] *See Kassin v. AR Res., Inc.*, No. 16-4171, 2017 U.S. Dist. LEXIS 41187 (D.N.J. Mar. 22, 2017). More specifically, the issue is whether language asking a consumer to directly contact the collection agency by phone regarding insurance coverage contradicts the validation notice set forth in the same letter. On these competing summary judgment motions, Defendant does not offer any

---

[1] Defendant sought my permission to file an interlocutory appeal of that decision, which I denied.

additional facts, but rather, re-raises legal arguments that were rejected on its motion to dismiss. In other words, this motion involves purely legal questions. This time around, Defendant argues that additional case law supports its position that the language in dispute does not violate the FDCPA. Because I disagree, Defendant's motion for summary judgment is **DENIED**, and Plaintiff's motion for summary judgment is **GRANTED**. Plaintiff's request for class certification is likewise **GRANTED**.

### BACKGROUND AND PROCEDURAL HISTORY

The following undisputed facts of this case are straightforward. On February 18, 2016, Plaintiff received a debt collection letter from ARR in an attempt to collect a debt. *See* Debt Collection Letter dated February 18, 2016. The one-page letter demanded payment on behalf of "SELECT MEDICAL — KESSLER" ("Select Medical") in the amount of $3756.55, and directed Plaintiff to contact ARR in the event that the subject debt was covered by Plaintiff's insurance: "If you carry any insurance that may cover this obligation, please contact [ARR's] office at the number above." *Id.* The letter concluded with a validation notice[2] written in bold text, as mandated by the FDCPA:

> Unless you notify this office within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice this office will: obtain verification of the debt or obtain a copy of a judgment

---

[2] The Fair Debt Collection Practices Act requires that a creditor include: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) **a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and** (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. 15 U.S.C. § 1692 (emphasis added)

and mail you a copy of such judgment or verification. If you request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*Id.*

Subsequent to the receipt of the debt collection letter, Plaintiff filed a Complaint, in which he alleges that the letter is in violation of two separate sections of the FDCPA, *i.e.*, § 1692g and § 1692e. In response, Defendant filed a motion to dismiss the Complaint. Applying the least sophisticated debtor standard, I concluded that the language in the letter offering the debtor the option to call with insurance coverage overshadowed and contradicted the language in the validation notice. Indeed, I reasoned that a debtor could plausibly be misguided by the language in Defendant's debt collection letter, and I explained that a consumer "may mistakenly dispute the debt by calling the collection agency, because the letter instructs that issues with coverage under an insurance policy can be handled by telephone." *Kassin*, 2017 U.S. Dist. LEXIS 41187, at *10.

Now, after the close of discovery, the parties move for summary judgment. Plaintiff also moves for class certification, which Defendant does not oppose.

## DISCUSSION

### I.      Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garges v. People's Light & Theatre Co.*, 529 F. App'x 156, 160 (3d Cir. 2013), judgment entered, No. 13-1160, 2013 WL 3455818 (3d Cir. June 28, 2013) ("Summary judgment is proper where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law" (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))). If a fact is capable of affecting the substantive outcome of the litigation, it is "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine"

if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" (internal citations omitted)); *Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, a court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. *Garges*, 529 F. App'x at 160. The party moving for summary judgment bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp.*, 477 U.S. at 322–23.

"Once the moving party has properly supported its motion for summary judgment, the nonmoving party must 'do more than simply show there is some metaphysical doubt as to the material facts.'" *Garges*, 529 F. App'x at 160 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). Indeed, the party opposing the motion may not rest on mere allegations or denials in his pleading, *see id.* at 160; rather, the nonmoving party must present actual evidence that creates a genuine issue as to a material fact for trial, *Anderson*, 477 U.S. at 248–49; *see also* Fed. R. Civ. P. 56(c)(1)(A) (explaining that in order for the party opposing summary judgment to show "that a fact cannot be or is genuinely disputed," he must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to support his factual position). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "[U]nsupported allegations . . . and pleadings are insufficient to

repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). After discovery, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322–23); *see also Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) ("The mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue" (citing *Anderson*, 477 U.S. at 249)). Importantly, in circumstances where the nonmoving party is pro se, such as here, "the court has an obligation to construe the complaint liberally." *Giles*, 571 F.3d at 322 (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir. 1997)).

## II.     FDCPA

Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). The FDCPA regulates interactions between "consumers" and "debt collectors," as those terms are defined thereunder, by prohibiting debt collectors from engaging in certain conduct. *Id.*; *see generally* 15 U.S.C. §§ 1692b-1692j. To foster compliance with its requirements, the FDCPA "permits private suits against debt collectors who violate its provisions." *Jerman*, 559 U.S. at 612 (citing 15 U.S.C. § 1692k(a)). The Third Circuit has advised that, "[a]s remedial legislation, the FDCPA must be broadly construed in order

to give full effect" to the purposes for which it was enacted. *Caprio v. Healthcare Revenue Recovery Grp.*, LLC, 709 F.3d 142, 148 (3d Cir. 2013).

**A.    § 1692g**

Relevant here, debt collectors must comply with the debt validation provisions of § 1692g, which were designed "to guarantee that consumers would receive adequate notice of their rights under the [FDCPA]." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000). Specifically, § 1692g(a) provides that, within five days after an initial communication with a consumer in connection with the collection of any debt, a debt collector must send the consumer a written letter containing a validation notice with the following information:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Taken together, "[p]aragraphs 3 through 5 of section 1692g(a) contain the validation notice—the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so." *Wilson*, 225 F.3d at 353-54. Significantly, although not expressly set forth in the statute, the Third Circuit has held "that subsection (a)(3), like subsections (a)(4) and (a)(5), contemplates that any dispute, to be effective, must be *in writing*."

*Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991) (emphasis added); *Laniado v. Certified Credit & Collection Bureau*, 705 F. App'x 87, 89 (3d Cir. 2017) ("[I]n order to be effective, the dispute must be in writing.").

Subsection b of § 1692g then provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C.A. § 1692g(b). In short, § 1692(b) requires "the debt collector to cease all collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor until the debt collector mails either the debt verification or creditor's name to the consumer." *Wilson*, 225 F.3d at 354.

As noted, the animating purpose behind § 1692g is to ensure that debtors receive adequate notice of their rights under the law. *See Caprio*, 709 F.3d at 148. Thus, "in order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter – the required notice must also be *conveyed effectively* to the debtor." *Wilson*, 225 F.3d at 354 (emphasis added); *Graziano*, 950 F.2d at 111 ("[S]tatutory notice must not only explicate a debtor's rights; it must do so effectively."). In essence, this means that the validation notice "must not be overshadowed or contradicted by other messages or notices

from the debt collector," such that the debtor could be misled into foregoing a statutory right. *Laniado*, 705 F. App'x at 89; *see* 15 U.S.C. § 1692g(b).

To determine whether the validation notice is "overshadowed or contradicted" by other messages or notices form the debt collector, courts within the Third Circuit apply the standard of the "least sophisticated debtor." *Caprio*, 709 F.3d at 149. "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (citation and internal quotation marks omitted). The least sophisticated debtor standard is thus "less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008). Under this standard, a validation notice is overshadowed or contradicted by other communications from the debt collector where those communications "'would make the least sophisticated debtor uncertain as to her rights.'" *Wilson*, 225 F.3d at 357 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)).

Nonetheless, the least sophisticated debtor standard "does not go so far as to provide solace to the willfully blind or non-observant." *Id.* at 299. Thus, "although this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Wilson*, 225 F.3d at 354-55 (citation omitted). Indeed, "[e]ven the least sophisticated debtor is bound to read collection notices in their entirety." *Campuzano-Burgos*, 550 F.3d at 299.

Here, Defendant argues that additional cases have been decided since my ruling on the motion to dismiss that would change the outcome of the legal questions previously resolved. But,

before I delve into Defendant's arguments in that regard, I note that ARR had made identical contentions, and cited to the same authorities, in a substantially similar FDCPA case before me, *Morello v. AR Res., Inc.*, No. 17-13706, 2018 U.S. Dist. LEXIS 138713 (D.N.J. Aug. 16, 2018). Indeed, *Morello* involved similar insurance language in a debt-collection letter sent by ARR to a different consumer. Having considered Defendant's arguments in *Morello*, I rejected them on ARR's motion to dismiss. Because those same arguments are being presented here, again, to promote judicial economy, I will incorporate, where appropriate, my *Morello* decision in this matter.

In my dismissal opinion in this case, I discussed the following regarding the complained-of language at issue:

> The debt collection letter, here, begins by explaining that a debt, in the amount of $3756.55, has been referred to ARR by Select Medical for collection purposes, and then directs Plaintiff to call Defendant in the event that the debt is covered under Plaintiff's insurance policy. Compl. ¶ 29, Ex. A. Although the letter concludes with a validation notice, in which Plaintiff's rights pursuant to the FDCPA are explained, Compl. ¶ 29, Ex. A, the insurance policy language may be susceptible to different meanings under the least sophisticated debtor standard. For example, a least sophisticated debtor could reasonably believe that he or she does not owe, or is not responsible for, a debt, because it is covered under the terms of his or her insurance plan. Or, in an alternative scenario, a least sophisticated debtor may mistakenly receive a debt collection notice, when the original service provider was already compensated by the debtor's insurance policy. Hence, the debtor, in either situation, may mistakenly dispute the debt by calling the collection agency, because the letter instructs that issues with coverage under an insurance policy can be handled by telephone. *See Caprio*, 709 F.3d at 151. Given that the complained-of language may mislead the least sophisticated debtor, it is therefore inappropriate for the Court to dismiss Plaintiff's Complaint. *Ashkenazi v. Certified Credit & Collections Bureau*, No. 14-7627, 2016 U.S. Dist. LEXIS 41000 (D.N.J. Mar. 29, 2016) (concluding that the least sophisticated debtor could plausibly be misled by a debt collection letter that directed the debtor to contact the debt collector by telephone, if the debt was covered under the debtor's insurance plan).

*Kassin*, 2017 U.S. Dist. LEXIS 41187, at *9-10.

In asking me to reconsider my reasoning, Defendant unconvincingly argues that this case should be dismissed based upon a duo of Third Circuit decisions in *Wilson* and *Szczurek v. Prof'l Mgmt., Inc.*, 627 Fed. Appx. 57 (3d Cir. 2015). I provided my reasons why these cases are distinguishable in *Morello*, and I will summarize them here. First, in *Wilson*, the court considered whether language contained in a debt collection letter, "which notified the debtor that his account has been placed with the debt collector for 'immediate action,' and that it 'shall afford [the debtor] the opportunity to pay this bill immediately and avoid further action against you,'" contradicted or overshadowed the required validation notice under § 1692g. *Wilson*, 225 F.3d at 352. The court answered in the negative, explaining that neither the physical characteristics nor the form of the letter overshadowed the standard validation notice contained in the letter, and that the statement did not make a threat of legal action within the 30-day period permitted for the debtor to dispute the debt in writing. *Id.* at 356.

In *Morello*. I explained that *Wilson* clearly did not involve the type of language at issue here. Rather, I found, and find here, that the Third Circuit's decisions in *Graziano*, *Caprio* and *Laniado* most appropriately guide my analysis. First, in *Graziano*, the plaintiff-debtor alleged, in relevant part, that language in a debt collection letter threatening legal action within ten days unless the debt was resolved in that time violated § 1692g of the FDCPA. *See Graziano*, 950 F.2d at 109. In the proceedings below, the district court granted summary judgment against the debtor on his § 1692g claim, reasoning that, despite the inclusion of the demand for payment within ten days, the validation notice in the letter adequately advised the debtor of his rights. *Id.* at 111. On appeal, the Third Circuit reversed, finding that the "juxtaposition of two inconsistent statements" — the demand for payment and the language providing that a debtor has thirty days to dispute a debt — "rendered the statutory notice invalid under section 1692g." *Id.* Specifically, the court reasoned

that there was "a reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days." *Id.*

Next, in *Caprio*, a debtor filed a complaint against a debt collector, alleging that language in a one-page, double-sided collection letter violated § 1692g, "because the least sophisticated debtor could reasonably believe that he could effectively dispute the validity of the debt by making a telephone call, even though such disputes must be made in writing in order to be effective in [the Third Circuit]." 709 F.3d at 150-51. Specifically, the debtor argued that the validation notice, which was printed on the back side of the letter, was contradicted or overshadowed by the following language, which appeared on the front side of the letter:

> If we can answer any questions, or if you feel you do not owe this amount, **please call** us toll free at **800-984-9115** or write us at the above address. This is an attempt to collect a debt. Any information obtained will be used for that purpose. (NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.)

*Id.* at 145 (emphasis in original).

The district court in *Caprio* granted the debt collector's motion for judgment on the pleadings. *Id.* at 146. On appeal, the Third Circuit reversed, holding that the "please call" language in the collection letter overshadowed and contradicted the validation notice, because it could be interpreted by the least sophisticated debtor as providing that he or she could dispute a debt by phone. *See id.* at 152-54. In reaching that conclusion, the court looked to both the "form" and the "substance" of the letter, finding as follows:

> We do acknowledge that this "please call" language could be read as nothing more than a mere invitation given other aspects of the Collection Letter. In fact, the District Court may be correct that "[a] more appropriate reading of the Collection Letter reveals that the language on the front of the letter reflects an invitation to communicate, and the validation notice on the back of the letter sets forth the Plaintiff's rights." *Caprio*, 2012 U.S. Dist. LEXIS 33651, 2012 WL 847486, at *5. The short paragraph containing this "please call" language actually included the

following instruction: "(NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.)" Already "charged with reading the Collection Letter in its entirety," *Caprio*, 2012 U.S. Dist. LEXIS 33651, 2012 WL 847486, at *5 (citing *Campuzano—Burgos*, 550 F.3d at 298), Caprio would then find the required Validation Notice on this "REVERSE SIDE." As the District Court also noted, the Collection Letter did not expressly state that a telephone call would be sufficient to dispute the debt.

However, it is not our responsibility to decide whether the debtor or the debt collector offers "a more appropriate reading" of a debt collection letter. We instead must interpret the document from the perspective of "least sophisticated debtor." Designed to protect naïve and even gullible individuals, "the 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Wilson*, 225 F.3d at 354 (quoting *Smith*, 167 F.3d at 1054).

Pursuant to this standard, we begin with the "substance" of the Collection Letter sent out by HRRG. This document instructed Caprio to call or write "if you feel you do not owe this amount." At the very least, the "least sophisticated debtor" could reasonably "feel" that he or she "do[es] not owe this amount" if he or she actually disputed the debt and its validity. If so, this "please call" language basically instructed such a debtor to call or write in order to dispute the debt itself. While he or she certainly could (and, in actuality, must) raise a debt dispute in writing, it is well established that a telephone call is not a legally effective alternative for disputing the debt. *See Graziano*, 950 F.2d at 112.

* * *

We therefore conclude that the Collection Letter was deceptive because "'it can be reasonably read to have two or more different meanings, one of which is inaccurate,'" *i.e.*, that Caprio could dispute the debt by making a telephone call. *Wilson*, 225 F.3d at 354 (quoting *Russell*, 74 F.3d at 35). In short, the Validation Notice was overshadowed and contradicted because the "least sophisticated debtor" would be "'uncertain as to her rights.'" *Id.* (quoting *Russell*, 74 F.3d at 35).

*Id.* at 151-52.

In a similar context, the Third Circuit, in *Laniado*, considered whether a debt collection letter containing language inviting the debtor to call the debt collector "should there be any discrepancy" violated § 1692g of the FDCPA. *Laniado*, 705 F. App'x at 88. Relying on its prior precedent, *Caprio*, the circuit court reversed the district court's order dismissing the case, finding that the cited language could mislead the least sophisticated debtor into foregoing his or her

statutory right to dispute a debt. *See id.* at 90-92. Specifically, the court reasoned, in relevant part, as follows:

> Considering the substance of the [letter], we find that it is materially indistinguishable from the letter at issue in Caprio. The debt collector's letter in Caprio instructed "to call or write 'if you feel you do not owe this amount.'" "At the very least, the 'least sophisticated debtor' could reasonably 'feel' that he or she 'do[es] not owe this amount' if he or she actually disputed the debt and its validity. If so, this 'please call' language basically instructed such a debtor to call or write in order to dispute the debt itself." Likewise, the letter currently before us instructed [the debtor] to call either a toll-free telephone number or a 24-hour automated customer service number should there be any discrepancy. The least sophisticated debtor could reasonably believe there was a discrepancy if he or she "actually disputed the debt and its validity." "If so, this 'please call' language basically instructed such a debtor to call . . . to dispute the debt itself. While he or she certainly could (and, in actuality, must) raise a debt dispute in writing, it is well established that a telephone call is not a legally effective alternative for disputing the debt."

> According to [the debt collector] (and the District Court), the [letter] "'is a simple attempt to collect a debt'" . . ., "invites the receiver to discuss the account and settlement" . . ., and "is merely continued collection activity and encourages settlement" . . . . [The debt collector] argues that the language at issue here must be understood as a continuation of its statements in the preceding paragraph reminding [the debtor] of the placement of the account for collection, indicating that settlement is expected with [the debt collector], and requesting payment in full. The letter could perhaps be read as nothing more than an invitation to communicate, pay, or reach some sort of compromise. "However, it is not our responsibility to decide whether the debtor or the debt collector offers 'a more appropriate reading' of a debt collection letter." In fact, we ruled in Caprio's favor even though we acknowledged that "this 'please call' language could be read as nothing more than a mere invitation given other aspects of the Collection Letter." We did so because the document must be understood from the perspective of the least sophisticated debtor—a standard that protects even the gullible.

*Id.* at 90-91 (citations omitted).

The insurance language at issue in this case falls closer to the prohibited language in *Graziano*, *Caprio* and *Laniado* than the letter in *Wilson*. First, ARR's collection letter included a standard validation notice that informed Plaintiff that all disputes related to the debt must be in writing. However, that notice is preceded by the following language: "If you carry any insurance

that may cover this obligation, please contact [ARR's] office at the number above." A least sophisticated debtor could reasonably interpret that language to mean that to the extent the debtor believes that an insurance provider is responsible for payment of a portion of the debt (*e.g.*, if the debtor only believes he or she is responsible for a co-payment), or the whole debt, he or she may dispute the debt obligation by calling ARR, rather than disputing the debt in writing. In other words, the least sophisticated debtor could reasonably be misled into calling — rather than writing — to dispute a debt by claiming that the insurance provider is the liable party. Although even the least sophisticated debtor is charged with reading the entirety of the collection letter, including the validation notice that follows the insurance language at issue, under these circumstances, it is plausible that the least sophisticated debtor would interpret the offending language as providing that he or she could also dispute the debt through a legally invalid method — calling Defendant. As such, the language here resembles the circumstances in *Graziano*, because its stands in juxtaposition to the language in the validation notice providing that a dispute must be in writing to be effective, thereby foregoing his or her statutory right under the FDCPA to dispute the debt. Accordingly, I reject Defendant's proposed analogy to *Wilson*.

Moreover, none of the non-binding decisions cited by Defendant has persuaded me otherwise. At the outset, many of the decisions cited by Defendant include language that merely invites the debtor to call the debt collector to provide information other than potential insurance coverage, such as attorney information or payment details, and thus, are based on facts distinguishable from the those presented in this case. *See, e.g., Rosa v. Encore Receivable Mgmt., Inc.*, No. 15-2311, 2016 U.S. Dist. LEXIS 112104 (D.N.J. Aug. 23, 2016) (holding that a statement inviting the debtor to call the debt collector if "payment has already been made" did not contradict or overshadow the validation notice); *Panto v. Prof'l Bureau of Collections*, No. 10-4340, 2011

U.S. Dist. LEXIS 23328 (D.N.J. Mar. 7, 2011) (holding that a statement in a collection letter inviting the debtor to provide the name, address, and phone number of his attorney did not overshadow or contradict the validation notice); *Vetrano v. CBE Grp., Inc.*, No. 15-3185, 2016 U.S. Dist. LEXIS 100396 (E.D.N.Y. Aug. 1, 2016) (finding that a statement directing the debtor to call the debt collector "to discuss paying with a check by phone, credit card or debit card" did not contradict or overshadow the validation notice).[3]

 *Cruz v. Fin. Recoveries,* No. 15-0753, 2016 U.S. Dist. LEXIS 83576 (D.N.J. Jun. 28, 2016) and *Anela v. AR Res., Inc.*, No. 17-5624, 2018 U.S. Dist. LEXIS 97864 (E.D. Pa. Jun. 12, 2018), are the only two decisions cited by Defendant where courts found that similar insurance language at issue in this case did not overshadow or contradict the validation notice. *See Cruz*, 2016 U.S. Dist. LEXIS 83576, at *6-7 (holding that language inviting the debtor to call the debt collector

---

[3] Defendant also points to *Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 58 (3d Cir. 2015), where the Third Circuit affirmed the dismissal of a debtor's claim that a collection letter with the following language violated § 1692g of the FDCPA: "If this debt is for medical services and you have insurance that may pay all or a portion of this debt, that information can be submitted by calling 800 220-0260 or by completing the information on the reverse side of this letter and returning the entire letter to this office." *Id.* at 59. Defendant's reliance on *Szczurek* is misplaced, however, because, as the district court in that case noted, the debtor's § 1692g claim was premised solely on another sentence in the collection letter, without any reference to the cited insurance language:

> The plaintiff complains of one sentence, the second in the first paragraph of the letter, which stated "To avoid further contact from this office regarding your past due account, please send the balance due to our office and include the top portion of this letter with your payment."

*Szczurek v. Prof'l Mgmt., Inc.*, 59 F. Supp. 3d 721, 724 (E.D. Pa. 2014) (emphasis added), *aff'd*, 627 F. App'x 57 (3d Cir. 2015). Indeed, in affirming the district court's decision, the Third Circuit confined its analysis to that single "contact" sentence, without referencing the insurance sentence in the letter. *See Szczurek*, 627 F. App'x at 61-62. Accordingly, because the debtor's FDCPA claim was not based on the insurance language in the collection letter, and because neither the district court nor the Third Circuit analyzed that language in dismissing the complaint, *Szczurek* has little relevance here.

"[i]f you have insurance that may pay all or a portion of this debt" did not contradict or overshadow the validation notice); *Anela*, 2018 U.S. Dist. LEXIS 97864, at *11-12 (finding that language inviting the debtor to call the debt collector "[i]f you carry any insurance that may cover this obligation" did not violate § 1692g). In both of those cases, the courts rested on a distinction between "resolving" and "disputing" a debt to find that the alleged offending language there did not contradict or overshadow the required language in the validation notice. *See Cruz*, 2016 U.S. Dist. LEXIS 83576, at *7 (finding that there was no violation of § 1692g, where the insurance language made "no reference to disputing the debt, only the provision of insurance information related to the debt."); *Anela*, 2018 U.S. Dist. LEXIS 97864, at *10 ("The 'least sophisticated debtor' who reads the letter in its entirety would not confuse his or her option to call to resolve the debt with his or her option to write to dispute the debt."). More specifically, the *Anela* court explained its reasoning as follows:

> . . . The Letter can invite the debtor to call to discuss insurance-related matters without violating the FDCPA provision mandating that disputes be submitted in writing. The Insurance Language inviting the debtor's call makes no reference to disputing the debt. It does not encourage or even suggest an alternative means of disputing the debt. Rather, the Letter requests the debtor call ARR to provide insurance information to pay the debt without interfering with the separate validation notice. Even when viewed from the perspective of the "least sophisticated debtor," the Insurance Language does not overshadow or contradict the validation notice, and therefore does not violate the FDCPA.

*Anela*, 2018 U.S. Dist. LEXIS 97864, at *12.

While I acknowledge that the case before me presents a close call, and appreciate the distinction that these courts have drawn between disputing a debt and resolving a debt, under the relevant standard, I find that the insurance language in this case is so closely related to disputing a debt that it could mislead the least sophisticated debtor into foregoing his or her statutory right to effectively dispute a debt, *i.e.*, in written form. Significantly, as *Caprio* and *Laniado* illustrate, the

Third Circuit has taken a broad view of what types of "call" language contradict or overshadow a validation notice, emphasizing that, in applying the least sophisticated debtor standard, the operative question is not whether such language "can be read as nothing more than a mere invitation" to communicate, pay, or reach some sort of compromise. *Caprio*, 709 F.3d at 151; *see Laniado*, 705 F. App'x at 90. Indeed, to hold otherwise would undermine the least sophisticated debtor standard altogether, by failing to protect those most susceptible to the harms that Congress intended to prevent in enacting the FDCPA. Viewed from this perspective, this Court declines to impose on the least sophisticated debtor the obligation to draw a narrow legal distinction between "resolving" and "disputing" a debt. Just as the *Laniado* court found that the least sophisticated debtor could reasonably interpret language inviting a call in the event of "any discrepancy" as providing that a dispute may be submitted by phone, here, it does not require a bizarre or idiosyncratic interpretation of the insurance language to find that the least sophisticated debtor could read the same as providing that, where the debtor believes his or her insurance carrier was liable for the debt, such a dispute may be submitted by phone, rather than in writing. Thus, I reject Defendant's argument — as inconsistent with the least sophisticated debtor standard — that the disputed language is susceptible to only one interpretation.

In sum, while deciphering the "sophistication" level of a debtor is an inherently difficult task, at a minimum, I find that language inviting a debtor to call the debt collector if another party (i.e., his or her insurance carrier) is liable for all or a portion of the debt obligation, rather than the debtor personally, could mislead that debtor into foregoing his or her statutory right to dispute a debt. Accordingly, because I find that the insurance language contradicts the required language in the validation notice, Plaintiff has proved that Defendant violated § 1692g of the FDCPA as a matter of law. In that regard, summary judgment is entered in favor of Plaintiff on this claim.

**B.** **§ 1692e**

Plaintiff also brings a claim under § 1692e. Section 1692e(10) prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). The Third Circuit has instructed that, "[w]hen allegations under 15 U.S.C. § 1692e(10) are based on the same language or theories as allegations under 15 U.S.C. § 1692g, the analysis of the § 1692g claim is usually dispositive." *Caprio*, 709 F.3d at 155 (citation and internal quotation marks omitted); *Laniado*, 704 F. App'x at 92; *see also Morse v. Kaplan*, 468 F. App'x 171, 173 (3d Cir. 2012). In that regard, because I find that the debt collection, by including the insurance coverage language, violated § 1692g, Defendant has, therefore, also violated § 1692e(10). Summary judgment is entered in favor of Plaintiff on this claim, as well.

Accordingly, Defendant's motion for summary judgment is **DENIED**, and Plaintiff's motion for summary judgment is **GRANTED**.

**III.    Class Certification**

Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to certify the following class:

> All New Jersey consumers (1) who received an initial collection letter from the Defendant (2) on an obligation owed or allegedly owed to Select Medical – Kessler, (3) which stated "If you carry any insurance that may cover this obligation, please contact our office at the number above" and (4) during the time period of 7/15/15 to 7/15/16.

Importantly, I note at the outset that Defendant does not oppose class certification. *See* Def.'s Letter dated June 4 ("ARR will not be filing a formal brief in opposition to Plaintiff's Motion for Class Certification . . . ."). In that regard, I will independently assess whether class certification is appropriate.

Certification of a putative class is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. c. Dukes*, 564 U.S. 338, 350–51 (2011) (citations omitted). More specifically, to satisfy the four requirements of Federal Rule of Civil Procedure 23(a),

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590–91 (3d Cir. 2012) (quoting Fed. R. Civ. P. 23) (citing *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010)). Additionally, "a class action must be maintainable under Rule 23(b)(1), (2), or (3)." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 438 (3d Cir. 2017).

"The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus*, 687 F.3d at 591 (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008), *as amended* (Jan. 16, 2009)); *Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017) (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 350). "In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *Hydrogen Peroxide*, 552 F.3d at 320 (citation omitted).

Here, I find that Plaintiff has met all the Rule 23 requirements. First, as to numerosity, there is no dispute that the size of the putative class members is well in excess of any minimum requirement imposed by Fed. R. Civ. P. 23. Indeed, Defendant has identified at least 2,350 potential class members. Second, Plaintiff has demonstrated that at least one question of fact or law is common to each member of the prospective class. *See Wal-Mart Stores, Inc.*, 564 U.S. at

359.  Clearly, there are common questions of law and fact related to the same subject-debt-collection letter that was sent to each class member, which letters all contained the same insurance dispute language.

Next, I further find typicality is met.  The third element of Rule 23(a) mandates that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23.  Importantly, "typicality acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees.'" *Grubb v. Green Tree Servicing, LLC*, No. 13-07421, 2017 U.S. Dist. LEXIS 117465, at *20 (D.N.J. Jul. 27, 2017) (quoting *Georgine v. Amchem Prods.*, 83 F.3d 610, 631 (3d Cir. 1996) *aff'd sub nom.*, *Amchem Prods., v. Windsor*, 521 U.S. 591 (1997)).  Here, Plaintiff's FDCPA claims are typical of those of the class members, because there are no defenses unique to Plaintiff or any of the class members.  And, there are no facts or circumstances that would render Plaintiff's claims atypical. Indeed, the gist of the claims centers on Defendant's form letter and its offending language.  As such, typicality is met.

Furthermore, I find Plaintiff is an adequate representative.  The adequacy "inquiry has two purposes: 'to determine [1] that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, . . . and [2] that there is no conflict between the individual's claims and those asserted on behalf of the class.'" *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 132 (3d Cir. 2012) (alterations and ellipsis original).  Generally, the adequacy of class representation assessment "tend[s] to merge with the [analysis of commonality and typicality]."  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Similar to the typicality requirement, adequacy requires "class representative[s] [to] be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prods., Inc.*,

521 U.S. at 625-26 (citations omitted). Accordingly, "[t]here are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and . . . the adequacy inquiry that focuses on possible conflicts of interest." *In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 602 (3d Cir. 2009). Thus, "[b]ecause of the similarity of [the typicality and adequacy] inquiries, certain questions—like whether a unique defense should defeat class certification—are relevant under both." *Id.* (first alteration added, second alteration original) (internal citation omitted). Here, for the same reasons why I find Plaintiff's claims are typical of, and in common with, the class members' claims, I also find Plaintiff is an adequate representative.

Finally, the requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. To certify a class under Rule 23(b)(3), the court must find that: "[T]he questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed R. Civ. P. 23(b)(3). Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In this case, both considerations weigh in favor of class certification.

As to the first question, in determining whether common questions predominate, courts have focused on the claims of liability against defendants. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. Here, there is no doubt that the question of whether the debt collection letter sent by Defendant violated the FDCPA predominates over any individual issues related to the class members. As to the issue of superiority, I find that given the large number of individual lawsuits that would be required if a

class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3).

Accordingly, Plaintiff's motion to certify class is granted.

## IV.    Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Nafar v. Hollywood Tanning Sys., Inc.*, No. 06 -3826, 2008 U.S. Dist. LEXIS 61439, at *7 (D.N.J. Aug. 12, 2008). Having reviewed the experience of the proposed class counsel, Marcus & Zelman, LLC, I find the Marcus Firm's representation adequate.

Turning first to the work counsel have done in identifying or investigating potential claims in the action, it appears that counsel (i) interviewed the plaintiff to address the information necessary to make a professional judgment as to whether claims existed under the Fair Debt Collection Practices Act; (ii) reviewed documents provided by Plaintiff; and (iii) conducted legal research into the claims set forth in the Complaint.  Looking next to counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, it appears that counsel (i) are experienced in handling numerous consumer-related and FDCPA types of cases in multiple states; and have been appointed class counsel in variety of cases.  Finally, examining the final two considerations, the Court has no concern about counsel's knowledge of the applicable law, given their experience in handling previous FDCPA matters, and has no reason to doubt that Marcus & Zelman, LLC has been and will continue to be committed to devoting

sufficient resources to represent the class. Accordingly, the Marcus Firm is appointed as class counsel.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is denied, and Plaintiff's motion for summary judgment is granted. I find that Defendant's debt collection letter, which contained insurance dispute language, violates both § 1692g and § 1692e of the FDCPA. Furthermore, Plaintiff's motion for class certification is granted. The class shall consist of all New Jersey consumers (1) who received an initial collection letter from the Defendant (2) on an obligation owed or allegedly owed to Select Medical – Kessler, (3) which stated "If you carry any insurance that may cover this obligation, please contact our office at the number above" and (4) during the time period of 7/15/15 to 7/15/16. Finally, the Court appoints the Marcus Firm as class counsel.


Dated: December 13, 2018

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge